### In re DARLING.
### No. 21366.

District Court, W. D. New York.
July 18, 1936.

Arthur Rathjen, of Rochester, N. Y., for bankrupt.

John Van Voorhis Sons, of Rochester, N. Y. (John Van Voorhis, of Rochester, N. Y.), for Thomas J. Northway, Inc., objecting creditor.

RIPPEY, District Judge.

The bankrupt filed a voluntary petition in bankruptcy on February 26, 1934, and was on that day adjudicated bankrupt, and the matter was referred to Nelson P. Sanford as referee for Monroe county. The petition showed total obligations of $27,-900.48 and total assets of $21,692. In his petition he stated that he owned no real or personal property except certain household furniture of the value of $250, which he claimed to be exempt, and certain shares of capital stock of corporations of the market value and one insurance policy of the cash surrender value of $21,430, all of which was pledged with the Genesee Valley Trust Company of Rochester as collateral security for loans aggregating $26,276.54 and two policies of life insurance in which his wife was named beneficiary which had no actual cash surrender value; the premiums past due having been paid by the companies. In Schedule B-2, Item G, of his verified petition relating to carriages and other vehicles, he stated that he owned none.

The first meeting of creditors was held on March 19, 1934. On March 28, 1934, an order was made dispensing with the appointment of a trustee and allowing the exemptions claimed; and on March 28, 1934, an order was made closing the case.

The bankrupt was examined at the first meeting of creditors and testified that on December 19, 1929, he procured an automobile from Thomas J. Northway, Inc., by whom he was employed, and that the purchase price thereof represented a bonus to which he was entitled for his year's work; that the bill of sale of the car was issued to him; that he gave the car to his wife as a Christmas present that year; that subsequently he left the employ of Northway and was thereafter sued for the value of the car, and Northway took judgment against him. In his schedules Thomas J. Northway, Inc., was listed as a creditor on such judgment for $734.85. This creditor did not ap-

pear and was not represented at the hearing. He further testified that the license for the car was taken out in his own name and that it never had been changed, although no license was taken out for the year 1934. He further testified that the value of the car at the time of the hearing was not to exceed $150.

On May 19, 1934, he filed his petition for a discharge. On July 2, 1934, Thomas J. Northway, Inc., filed specifications of objections to discharge through John Van Voorhis Sons as attorneys, alleging that the bankrupt had knowingly made a false oath and rendered a false account in and in relation to his proceedings in bankruptcy, in that he stated in Item G of Schedule B of his verified petition that he owned no carriages or other vehicles, whereas, in truth, he was the then owner of a 1929 model C brougham Reo and that he knowingly and fraudulently concealed the same from his creditors. The matter was referred to Referee Sanford on July 3, 1934.

■ Hearing was had upon the objections on November 8, 1934. At the opening of the hearing the bankrupt moved that the objections be dismissed upon the ground that the record of the first hearing showed that the automobile referred to was disclosed to the referee and that an order was then made closing the case and that the bankrupt had fully and fairly accounted to the court for all the property, and that he had not been guilty of any offense punishable by imprisonment or made a false oath. That motion was denied. The bankrupt attempted to introduce evidence, on cross-examination of Northway, to the effect that the car was in fact purchased by the bankrupt for his wife and that the application for registration of the car was filled out as a matter of routine, but was not permitted to cross-examine the witness as to such facts, and an exception was taken. The attempted cross-examination was proper, and that exception, if decisive, would require a reversal. It appeared that on June 30, 1934, an application for registration of the car was made by Mrs. Mina M. Darling, and that a transfer of the car from Fincher Motors, Inc., to her was made on the same day, and that there was no record by Fincher Motors, Inc., of any sale of such car to her, and no sale had been made to her of such car by that concern. Darling was sales manager of Fincher Motors at the time of the alleged transfer. The cross-examination of the witness from Fincher Motors, Inc., was such as to make his testimony on cross-examination of little value.

■ The bankrupt was sworn and testified that the car had been kept in the garage at his home at all times except for about two weeks when it was in the Fincher Motors garage; that he never owned a car himself; that he had given this particular car to his wife in 1929, although he had registered it in his name, but that the car referred to by the objecting creditor was substituted for the car that he had given her; that his wife had driven the car at all times. He was not permitted by the referee to explain the circumstances as to the registry of the car in his name. The bankrupt introduced in evidence all of his testimony in regard to his wife's ownership of the car and other details given at the first meeting of creditors.

In connection with the transfer of the car from Fincher Motors, Inc., to Mrs. Darling, the bankrupt testified that during the year 1934 the car had not been driven except with dealer's license plates, as he was working for the Fincher Motors and as the car had been repaired and put in shape for operation, and after the first six months of the year 1934 had expired he had his wife make the application for a license and that it was made upon the advice of counsel. He testified frankly and fully with regard to the whole transaction, as he had at the first meeting of creditors. On cross-examination the bankrupt testified that the insurance on the car was carried in his name.

The reading of the entire record indicates that there was no intentional concealment and that the bankrupt did in fact give the car to his wife in 1929. Technically, by virtue of the registration of the car, he was prima facie the owner.

■ To bar the discharge, the false oath, if any, must have been knowingly and fraudulently made, the concealment willful and fraudulent, and the oath claimed to be false or concealment claimed to be fraudulent must have been made or practiced willfully and with intent to defraud. The facts and record warrant no such conclusion. At the first meeting of creditors, the bankrupt fully, truly, and voluntarily disclosed all the facts relating to the car, its ownership and use. He kept nothing from the court. No creditor was present to prod him into disclosing the facts. The record discloses that he was innocent of any fraudulent purpose or intent to deprive the creditors of any right they might have to the car as one of

the assets of his estate. The creditors have made no effort whatever to recover the car as one of his assets. There was nothing to indicate that he did anything to conceal or hide any of his property. The evidence adduced was not of the character required by law to sustain the objections so as to bar the discharge. Humphries v. Nalley (C.C. A.) 269 F. 607. That counsel for the objecting creditor was of the same opinion after a full study of the record is indicated by the fact that upon the hearing he stated in open court that, although he did not desire to withdraw the specifications of objection, he did not wish to further be heard to oppose the granting of the discharge.

For the reasons hereinbefore urged, the findings of the referee are disapproved, the objections are overruled and dismissed, and the discharge must be granted. It is so ordered.